UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| HARMONY HOME OF HUNTINGTON, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:24-cv-1228 |
| STATE OF INDIANA; EXECUTIVE DIRECTOR, INDIANA DEPARTMENT OF HOMELAND SECURITY, in his official capacity, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**Complaint for Declaratory and Injunctive Relief**

**Introduction**

1.     In *New Horizons Rehabilitation, Inc. v. Indiana*, 400 F. Supp. 3d 751 (S.D. Ind. 2019), this Court held that the actions of the State of Indiana and the Executive Director of the Indiana Department of Homeland Security in imposing requirements on a group home for persons with disabilities where the home was in all respects identical to homes containing single families, other than the fact that they were not occupied by a "traditional family," violated the Fair Housing Act Amendments Act, 42 U.S.C. § 3604(f); the Rehabilitation Act, 29 U.S.C. § 794; and the Americans with Disabilities Act, 42 U.S.C. § 12132.

2.     Now, five years after *New Horizons*, the same defendants are imposing the same

[1]

onerous and unlawful requirements on one of three group homes for persons with disabilities operated by Harmony Home of Huntington, Inc. ("Harmony Home"), in Huntington, Indiana. Specifically, the State has classified an existing home on Franklin Street in Huntington, Indiana as a Class 1, commercial-type, structure and is requiring Harmony Home to install a sprinkler system that will cost at least $27,000. This is not a requirement imposed on Class 2 structures, which are structures occupied as single-family residences. The defendants are imposing this requirement even though the group home is indistinguishable in architecture or in use from single-family homes containing nuclear families. The defendants have refused to grant a variance to Harmony Home that would allow the home to be treated like any other single-family residence and not have a fire suppression system, even though Harmony Home operates two other group homes for persons with disabilities in single-family residences in Huntington where the defendants have granted variances and excused Harmony Home from installing a fire suppression system.

3.     The actions of the defendants are no less unlawful and discriminatory now than they were in 2019, and the failure to treat the home in the same manner as single-family homes housing nuclear families violates the Fair Housing Amendments Act, the Rehabilitation Act, and the Americans with Disabilities Act. Appropriate injunctive and declaratory relief should be granted requiring defendants to treat Harmony Home's Franklin Street group home in the same manner as traditional single-family homes

[2]

housing nuclear families and to prohibit the imposition of the requirement that it install a sprinkler system.

**Jurisdiction, venue, cause of action**

4.      This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

5.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

7.      Plaintiff brings its claims pursuant to 42 U.S.C. § 3613, 42 U.S.C. § 12133, and 29 U.S.C. § 794a(a)(2).

**Parties**

8.      Harmony Home is a non-profit corporation incorporated in Indiana.

9.      The State of Indiana has received federal funds and is therefore subject to the Rehabilitation Act, 29 U.S.C. § 794.

10.      The Executive Director of the Indiana Department of Homeland Security is the duly appointed head of the Indiana agency that has also received federal funds and, among other things, administers required building code reviews and enforces fire and building safety codes in public buildings in Indiana.

**Legal background**

11.      Under the Fair Housing Amendments Act ("FHA"), 42 U.S.C. § 3601, *et seq.*, it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny,

[3]

a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1). The term "handicap" means a person who has "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3602(h)(1).

12.    The Americans with Disabilities Act ("ADA") provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Land use regulations are deemed to be an activity of government. *See, e.g., Wisconsin Community Services, Inc., v. City of Milwaukee*, 465 F.3d 737, 750 (7th Cir. 2006) (referring to local zoning decision). The ADA's definition of an individual with a disability includes, among other persons, a person who has a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. 12102(1).

13.    The Rehabilitation Act, 29 U.S.C. § 794(a), provides that "no otherwise qualified individual with a disability" may be discriminated against on the grounds of that disability by any program receiving federal funding. The Rehabilitation Act incorporates the ADA's definition of "individual with a disability." 29 U.S.C. § 705(20)(B).

14.    Alcoholism and drug addiction are impairments recognized by the above statutes.

[4]

However, this inclusion does not include those who have a "current, illegal use of or addiction to a controlled substance." 42 U.S.C. § 3602(h). *See also* 42 U.S.C. § 12210(a).

**Factual allegations**

*Class 1 and 2 structures*

15.    Under Indiana law a Class 1 structure is one that is occupied by the general public, by three or more tenants, or by one or more persons who act as the employees of another. Ind. Code § 22-12-1-4; 675 IAC 12-6-2.

16.    The definition of Class 1 structures excludes "Class 2" structures that are defined as:

> (1) A townhouse or a building or structure that is intended to contain or contains only one (1) dwelling unit or two (2) dwelling units unless any part of the building or structure is regularly used as a Class 1 structure.
>
> (2) An outbuilding for a structure described in subdivision (1), such as a garage, barn, or family swimming pool, including an above ground swimming pool, unless any part of the outbuilding is regularly used as a Class 1 structure.

Ind. Code § 22-12-1-5.

17.    Numerous requirements are imposed on Class 1 structures, including generally the requirement that the structure contain a sprinkler system.

18.    A Class 2 structure does not have to have a sprinkler or other automatic fire extinguishing system.

19.    If deficiencies in existing Class 1 structures are found and not corrected, there are potential consequences, including progressively increasing fines or judicial or

[5]

administrative remedies to force the closure of the structure.

20.    In *New Horizons* this Court found, among other things, that the distinction between Class 1 and Class 2 structures imposed disparate treatment on the group home residents and the owner of the home in violation of the ADA, FHA, and Rehabilitation Act. 400 F. Supp. 3d at 768.

21.    In *New Horizons* this Court further found that the failure to grant a variance allowing the structure in question to be treated as a Class 2 structure without a fire suppression system violated the ADA, FHA, and Rehabilitation Act as failing to provide a reasonable accommodation. *Id.* at 766.

22.    Following the issuance of the *New Horizons* decision, the Department of Homeland Security issued a Public Notice designed to clarify "when supportive living facilities" are considered as Class 1 or 2 structures. (Exhibit 1).

23.    The notice defines supportive living facilities as facilities "that provide staff to its residents to assist with daily living" and states that these facilities are considered Class 2 structures if:

1.    the structure is a townhouse or only contains one or two dwelling units;

2.    the structure is intended to be occupied by no more than two tenants (except for townhouses which may only have one tenant per unit by definition);

A tenant is someone, or some group that either: (1) has possession of a unique portion of a structure; or (2) occupies a structure on unique or independent terms from other occupants. The overarching concern is whether the person or persons occupying, or intending to occupy, the

[6]

structure or portion of the structure, are doing so independently or as a single occupant. If a structure is rented out on a per room basis (even with shared common areas), the structure has as many tenants as rooms intended to be rented out.

3.  the structure is intended to be used for nontransient residential occupancy;

4.  the presence of employees at the structure is limited to providing supportive living services (services limited to supporting the regular use and enjoyment of the structure for residential purposes); and

5.  the structure does not contain nonresidential areas that are not traditionally found in a dwelling unit.

(*Id.*).

*Harmony Home*

24. Harmony Home is an Indiana nonprofit organization that is dedicated to offering recovery to men suffering from substance abuse disorders through a twelve-step program that includes providing residential care in a safe and supportive environment and that provides the opportunity for rehabilitation and lifelong sobriety.

25. The primary way that it fulfills its organizational purposes is by operating group living properties that house persons recovering from substance abuse disorders, including both alcohol and drug addiction, where residents are able to live, receive treatment and attain and maintain sobriety so they can be healthy and productive members of society.

26. At the current time Harmony Home operates three group homes in Huntington, Indiana, where residents receive treatment through 12-step programming and where

[7]

treatment includes residential services to help them stop the destructive behavior of substance abuse and addiction.

27.     The homes are located on First, Tipton, and Franklin Streets in Huntington.

28.     The residents of all three homes are men who are seeking recovery from drug and/or alcohol addiction and are persons with impairments that substantially limit one or more major life activities. They are unable to live on their own at the current time without relapsing and are unable to care for themselves. They also have a history of having substantial limitations in one or more major life activities because of their substance abuse disorders.

29.     The men may reside in the home for up to 12 months or longer if they remain unable to live on their own without lapsing into alcohol or substance abuse after 12 months.

30.     Some of the twelve-step programming that the residents receive takes place away from the homes.

31.     The staff of Harmony Home includes certified peer recovery coaches as well as other persons who have graduated from the program and they will frequently meet with residents to assist them with their recovery.

32.     In the homes the men live as a family, sharing meals, responsibility, and life.

33.     The homes have a live-in manager, who may be a senior resident, who assists in the management and supervision of the homes and the support of the residents.

[8]

However, it is the residents who are responsible for the day-to-day operation of the homes, and they do this communally, as a family.

34.    The program is based on peer-support with supervision.

35.    The homes are the permanent residences of those living there for the time it takes to complete the treatment program provided by Harmony Home.

36.    During this time, they participate in Harmony Home's programming and receive the therapeutic support of living in a family setting with peer support.

37.    The homes have been constructed as single-family residences and are physically indistinguishable from other single-family residences that are nearby. The residents share bedrooms and do not have possession of unique parts of the homes and do not occupy the homes on independent terms from the other occupants but live as a family.

38.    Prior to opening for residents, each home was inspected and was approved by local fire department personnel and have been reinspected annually thereafter.

39.    All the homes have interconnected hard-wired smoke detectors, fire extinguishers, evacuation plans, and temporary ladders from the second floor to be used in case of the need to evacuate the homes because of a fire or other emergency. Residents regularly participate in fire drills.

40.    The homes satisfy the local zoning standards imposed on the single-family residences that are near them.

41.    The Franklin Street home opened in March of 2023.

[9]

42.     Despite the fact that the home is a single-family home and the men living there are living as a family, defendants have taken the position that the Franklin Street home is a Class 1 structure and Harmony Home was informed by the State Fire Marshal's office, an office within the Indiana Department of Homeland Security, that a fire suppression system—a sprinkler system— had to be installed or a variance had to be requested from the defendants.

43.     The group home on Franklin Street meets all the requisites for a Class 2 structure as set out in defendants' Public Notice. (Exhibit 1).

44.     If defendants considered the Franklin Street group home to be a Class 2 structure it would not, and under Indiana law could not, be required to install a sprinkler system.

45.     The group homes on Tipton and First Streets are in all ways comparable to the Franklin Street home.

46.     The Tipton and First Street homes opened in 2019 and 2021 and Harmony Home was informed by defendants' employees that these homes had to have a sprinkler system installed. However, Harmony Home applied for and received a variance from the Department of Homeland Security's Fire Prevention and Building Safety Commission so that it was not required to install a sprinkler system in either group home. These variances remain in full force and effect.

47.     Harmony Home therefore sought a variance of defendants' demand that it install a sprinkler system in the home on Franklin Street. It filed its variance request in 2022.

48.     In its variance application Harmony Home noted that it was a non-profit organization with limited resources and did not have the funds necessary to install and maintain a sprinkler system throughout the entire home.

49.     Harmony Home received an estimate of approximately $27,000 to install the sprinkler system in the Franklin Street home.

50.     Harmony Home does not own the Franklin Street home but is planning to buy it from its current owner.

**51.**     In its variance application Harmony Home indicated that it would have interconnected and hardwired smoke detectors in every bedroom, at the top of the stairs, in the common living areas, in the kitchen, and in the basement. It also indicated that it would have fire extinguishers throughout the home and would have ladders available from the second floor. These are all safety features that are present in Harmony Homes' other two homes and have already been installed in the Franklin Street home.

52.     On November 1, 2022, the Commission approved a variance "for two years, expiring December 31, 2024, while proponent does necessary fundraising to install a 13-D sprinkler system."

53.     Although labelled as an "approval," the Commission's action is not an approval, but merely a deferred denial of the variance, as Harmony Home must have the fire suppression system installed by December 31 of this year or it will be subject to penalty and sanctions from defendants including having to remove all but 2 residents from the

[11]

home that currently houses 13 men receiving necessary treatment.

54.    Harmony Home cannot operate the Franklin Street home with only two men in it. This is impossible from a financial perspective as the amount that two men would pay for staying in the home and the Harmony Home program is insufficient to pay for the expenses of the program and the home. Equally important is the fact that with only two persons in the home there would not be the necessary peer support to prevent the residents from lapsing back into addiction.

55.    The Franklin Street home is a Class 2 structure and but for the fact that the home is a group home for persons with disabilities, the Class 1 status and its attendant burdens would not be imposed on the Franklin Street home.

56.    The defendants have engaged in intentional discrimination against Harmony Home and the residents of the Franklin Street home who are persons with disabilities solely because the home is occupied by persons with disabilities as opposed to a nuclear family.

57.    Harmony Home is a non-profit entity and does not have the available funds to install a fire suppression system in the Franklin Street home or to make any other changes that a Class 1 designation would require.

58.    Harmony Home and its residents in the Franklin Street home are being caused irreparable harm for which there is no adequate remedy at law.

**Legal claims**

59.     The actions of the State of Indiana and the Executive Director of the Indiana Department of Homeland Security in imposing burdens and requirements upon Harmony Home and its residents in the Franklin Street home that would not be imposed if the identical structure was occupied by a nuclear family, and are therefore imposed solely because of the status of the residents as persons with disabilities, represent intentional discrimination against Harmony Home and the residents because of the status of the residents as persons with disabilities. This violates the Rehabilitation Act, 29 U.S.C. § 793(a); the Fair Housing Amendments Act, 42 U.S.C. § 3604(f); and the Americans with Disabilities Act, 42 U.S.C. § 12132.

60.     The actions of the State of Indiana and the Secretary of the Indiana Department of Homeland Security in refusing to grant the variance sought by Harmony Home to excuse the sprinkler requirement for the Franklin Street home represent a failure of the defendants to make a reasonable accommodation to avoid discrimination because of disability. This also violates the Rehabilitation Act, 29 U.S.C. § 794; the Fair Housing Amendments Act, 42 U.S.C. § 3604(f); and the Americans with Disabilities Act, 42 U.S.C. § 12132.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

a.      Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

[13]

b.   Declare that defendants have violated federal law for the reasons noted above.

c.   Enter a preliminary injunction, later to be made permanent:

   i.   enjoining defendants from classifying the home on Franklin Street that Harmony Home maintains for its residents as a Class 1 structure and enjoining them from treating the home any differently than single-family residence occupied by a nuclear family.

   ii.   enjoining defendants to grant the variance that Harmony Home has sought for its Franklin Street home totally excusing it from installing a sprinkler system.

d.   Award plaintiff its costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 794a(b), 42 U.S.C. § 12133, and 42 U.S.C. § 3613(c)(2).

e.   Award all other proper relief.

Kenneth J. Falk
Stevie J. Pactor
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202
317/635-4059
fax: 317/635-4105
kfalk@aclu-in.org
spactor@aclu-in.org

Attorneys for Plaintiff

[14]